34 N.J. Super. 203 (1955)
111 A.2d 796
ARTHUR V. OWENS, BERTRAM S. WILSON, IRMA LEWALLEN, CHARLES S. SHAPIRO AND WILLIAM S. PEIFER, PLAINTIFFS,
v.
PRESS PUBLISHING COMPANY, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 17, 1955.
*205 Mr. Morris Goldsmith, attorney for plaintiffs (Messrs. Goldstein and Barkan, of the Philadelphia bar, of counsel).
Messrs. Gilhooly, Yauch and Fagan (Mr. John H. Yauch appearing), attorney for defendant.
LEONARD, J.C.C. (specially assigned).
The five plaintiffs herein have moved for summary judgment against the defendant, *206 and the defendant in turn has moved for a dismissal of the complaint and summary judgment against the plaintiffs.
For the purposes of this motion, each counsel has agreed to rely upon the pleadings filed, as amended and supplemented, the pretrial order, the supplemental pretrial order, the exhibits mentioned therein, and the answers to interrogatories by each of the plaintiffs.
The material facts involved herein are not disputed and are generally stipulated and agreed to in the pretrial order and the supplement thereto. Presently I will not attempt to set forth these facts, but will refer to the same as they become pertinent in this determination.
These five plaintiffs are all former employees of the defendant who seek in this suit the recovery of severance pay from the defendant, the publisher of a newspaper in Atlantic City. On March 14, 1944 the Newspaper Guild of Philadelphia and Camden, and I will hereafter refer to it as the Guild, was certified as the exclusive collective bargaining agent for certain categories of the defendant's employees, including the categories of the five plaintiffs. Thereupon, the Guild and the defendant did on October 23, 1944 enter into a collective bargaining agreement or labor contract. Thereafter, five successive agreements or contracts were entered into between them, the last being on November 20, 1950, which contract by its terms expired on August 22, 1952.
All these labor contracts or agreements provided:
"When an employee is discharged for any reason other than gross misconduct, he shall be paid in addition to any sum otherwise due him, one week's pay for each six months of continuous service or major fraction thereof."
The maximum was increased by each contract, from 5 years and 15 weeks in the first contract, to 12 years and 24 weeks in the last contract.
It is upon these provisions for severance pay that the plaintiffs base their claim in this action.
*207 It is essentially settled that employees such as the plaintiffs may bring this action in their own name directly against the defendant for the enforcement of the rights contained in a bargaining agreement or contract. With this I am certain that both counsel agree. Dooley v. Lehigh Valley R.R. Co., 130 N.J. Eq. 75 (Ch. 1941), 131 N.J. Eq. 468 (E. & A. 1942); Kennedy v. Westinghouse Electric Corp., 16 N.J. 280 (1954).
The rules of construction to be applied to these agreements or contracts have been fully set forth by our Supreme Court in the Kennedy case, supra. A collective bargaining agreement must be construed not narrowly and technically, but broadly and so as to accomplish its evident aims. Such an agreement should have a reasonable construction. The situation of the parties, attendant circumstances, and objects they were thereby striving to obtain are to be regarded. The canons of construction brought to bear on the ordinary contract are fully serviceable in ascertaining the meaning of the language employed in a collective bargaining agreement.
I will attempt to follow these canons in making my determination herein.
As I have said, there were six contracts executed between the Guild and the defendant, each with a similar provision as to severance pay, but with different maximums. That the Guild and the defendant in the interest of all the members had a right to mutually modify these contracts by subsequent contracts cannot tenably be argued. Elder v. New York Central R.R. Co., 152 F.2d 361 (6th Cir. 1945); Walker v. Pennsylvania-Reading S.S. Lines, 142 N.J. Eq. 588 (Ch. 1948).
I will, therefore, hold that the last contract, that is the one dated November 20, 1950, Exhibit P-7 in evidence, is the effective one herein, and the one upon which I will attempt to determine the respective rights of the parties herein. With that conclusion counsel are likewise in agreement.
*208 All the plaintiffs, except the plaintiff Lewallen, were hired at a time when one or the other of these contracts were in force and are, therefore, entitled to the benefit of the rights set forth therein as modified by the last contract.
The plaintiff Lewallen was originally in the editorial department of the defendant and hired in 1935, and had been continuously so employed up to 1944 when the Guild and the defendant entered into the first contract.
I will determine that the first contract covered her as well as other employees then in the employment of the defendant. See Article I of the first contract, Exhibit P-1. She, therefore, likewise is entitled to the benefit of the rights set forth in the first contract, as finally modified by the last contract.
As I have previously stated, the last contract expired on August 22, 1952. Prior to its expiration the Guild and defendant attempted to negotiate a new contract but were unable so to do, and no new contract was ever entered into between them. The plaintiffs continued to be in the employment of the defendant until 1953, at various dates, when their services were terminated.
The question involved herein is, what right, if any, do each of the plaintiffs have to severance pay under said contract. The plaintiffs claim they are entitled to it from the time of their respective hiring until the time of the termination of their employment, and that this right became vested in them under their contract.
The defendant, on the other hand, contends all the rights of the plaintiffs to severance pay arise under said contract and ended with the termination of it, and that these plaintiffs have no vested right thereto.
Before attempting to dispose of these contentions, I feel it incumbent to discuss the philosophy of severance pay.
Its purpose is to carry an employee for an interim period after termination of employment in recognition of his faithful employment; to tide him over between jobs. Hudson County Newspaper Guild v. Jersey Pub. Co., 23 N.J. Super. 419 (App. Div. 1952).
*209 Severance pay has been defined as wages earned throughout the period of service. In re Public Ledger, Inc., 161 F.2d 762 (3 Cir. 1947).
Provisions of this character (referring to severance pay) are generally considered wages, that is compensation for services rendered, which through no fault of employee he was not permitted to render. In re Elliott Wholesale Grocery Co., 98 F. Supp. 1017 (D.C.S.D. Cal. 1951).
Severance pay was not in any true sense damages, but constituted compensation earned, the amount of which was measured by extent of previous services. In re Brooklyn Citizen, Inc., 90 N.Y.S.2d 99 (Sup. Ct. 1949).
The defendant cites the cases of System Federation No. 59, etc. v. Louisiana and Arkansas Ry. Co., 119 F.2d 509 (5th Cir. 1941); Elder v. New York Cent. R.R. Co., 152 F.2d 361 (6th Cir. 1945); Walker v. Pennsylvania-Reading S.S. Lines, 142 N.J. Eq. 588 (Ch. 1948), and others, for the general proposition that the authorities are uniform to the effect that collective bargaining agreements do not create a permanent status, give an indefinite tenure or extend rights created and arising under the contract beyond its life, when it has been terminated in accordance with its provisions.
By authority of this rule it can be stated generally that when the last contract expired all rights thereunder expired with it. But, can it likewise be said that this will bar the plaintiffs' claims for severance pay up to the date of the expiration of the last contract, to wit, August 22, 1952? I do not so believe.
The cases cited by the defendant to sustain its position generally all deal with seniority rights and vacation pay. Most of them deal with rights in the future as distinguished from earned rights. I might say in passing, that none of them deal with earned severance pay. While there are no severance pay cases in this State on point, the logic of the case of Textile Workers Union v. Paris Fabric Mills, Inc., 22 N.J. Super. 381 (App. Div. 1952), seems to me to govern this situation. The court said, 22 N.J. Super., at page 384:
"Although the contract made specific provision that either the employer or the union could terminate the contract as of April 30 of *210 any year, by giving the required notice of such intention to the other party, no provision was made concerning the effect of such termination on the rights of employees to vacation benefits earned while the contract was still in effect."
And the court in that case determined that these employees were entitled to the vacation pay earned while the contract was in effect, even though their action was instituted after the expiration of the said contract.
The court in the Paris Fabric case, supra, cited with approval the case of Hercules Powder Co. v. Brookfield, 189 Va. 531, 53 S.E.2d 804, 809 (Sup. Ct. App. 1949). That case did involve termination or severance pay, and, may I say, it is the only case cited by counsel that does.
In that case, without attempting to recite all the facts which have been well briefed and discussed by counsel, I will recite the following from the opinion of the court:
"The Handbook stated in the chapter or heading dealing with `Industrial Relations Plan' that the plans in effect, `are subject to discontinuance or change from time to time.' Relying upon this provision, defendant contends that it had a right to discontinue the dismissal wage plan on November 29, 1945, without legal liability to any employee who accepted employment with the Engineer Corps, though his term of employment with defendant had on that date met the requirement as to length of service and all other conditions."
The court said further:
"We agree that the right of discontinuance of the plan to any unearned benefits was reserved by defendant. Yet, it could not be discontinued and thus deprive the plaintiff of benefits of dismissal salary already earned as of the date of its discontinuance. That would constitute not mere discontinuance of the plan, but forfeiture of plaintiff's contractual rights amounting to a breach of the contract."
Thus, in the case at bar, to allow the defendant to prevail as to the severance pay earned and accrued up to August 22, 1952, the date that the last contract expired, would in my humble judgment be a forfeiture of these earned and accrued rights of the plaintiffs. If the defendant's contention is *211 correct, the defendant would have to pay severance pay if it discharged the plaintiffs on August 21, 1952, but it would not have to pay severance pay if it discharged them the next day. This certainly cannot be a reasonable construction of this labor contract and agreement, and was never intended by the parties. It is a forfeiture at its best. A construction such as contended for by the defendant in this instance would not accomplish the objects of the parties and the object that they strive to obtain, in the light of the philosophy and definitions of severance pay that I have hereinbefore discussed.
I will, therefore, hold that the plaintiffs' right to severance pay commencing with the date of their employment and terminating with the expiration of the last contract, to wit, August 22, 1952, was earned and accrued, and only the time of payment was postponed to the time when they were discharged, there being no claim that they were discharged for gross misconduct.
The plaintiff Shapiro is not entitled to the benefit of this ruling since there is a factual dispute as to whether he was discharged or whether he quit.
Therefore, summary judgment may be entered in favor of the plaintiff Owens for severance pay for the period of August 29, 1949 to August 22, 1952; for the plaintiff Wilson from June 17, 1946 to August 22, 1952; for the plaintiff Peifer from January 30, 1951 to August 22, 1952; and for the plaintiff Lewallen from October 28, 1935 to August 22, 1952. In so far as the plaintiff Lewallen is concerned, this period will be limited by the maximum provision of the last contract and the defendant will be entitled to a credit against her for all sums of money paid her by way of severance pay for said period. In so far as the plaintiff Shapiro is concerned, on his claim for the period of August 23, 1951 to August 22, 1952, summary judgment is denied until a trial is had on the single issue of whether he was discharged or whether he quit.
*212 There has been raised the defense of accord and satisfaction by the defendant, in that the defendant paid each plaintiff at the time of his discharge sums of money or wages. This defense is considered to be without merit, and is accordingly stricken.
A consideration is necessary to render an accord and satisfaction valid. There must be some advantage, or presumed or assumed advantage accruing to the party who yields his claim, or some detriment to the other party. To constitute a valid accord and satisfaction, it is essential that the debtor shall have offered what was given and the creditor shall have accepted it with the intention it should operate as a satisfaction. Where the debt or demand is liquidated or certain and is due, payment by the debtor and receipt by the creditor of a less sum is not a satisfaction thereof, although the creditor agrees to accept it as such, if there is no release under seal or no new consideration given. Decker v. George W. Smith & Co., 88 N.J.L. 630 (E. & A. 1915).
According to the evidence before me, the payments which were given by the defendant to the plaintiffs were all by vouchers and had endorsed thereon: "Two weeks' pay in lieu of notice, and accrued two weeks' vacation credits." Certainly on its face there is shown an intention that it be for the specific purpose noted upon the vouchers, and for no other purpose. It cannot be considered as a new consideration, since the defendant was already bound to make these payments. I do not feel there is any question of fact on that defense that need be submitted to the jury. For these reasons I will strike that defense.
Having disposed of the plaintiffs' claim up to the date of expiration of the last contract, to wit, August 22, 1952, I now turn to the plaintiffs' claim from that date to the date of the termination of the services of the individual plaintiffs.
It is my opinion that these claims must be denied.
As previously stated, the authorities are uniform to the effect that the collective bargaining agreements do not create a permanent status, give an indefinite tenure, or extend rights *213 created and arising under the contract beyond its life, when it has been terminated in accordance with its provisions. I refer to the cases that I have cited previously.
Therefore, all rights of the plaintiffs to future severance pay would be terminated as of August 22, 1952 and they would not be entitled to it thereafter under the expired contract. It thus becomes incumbent upon the plaintiffs to prove an independent right thereto, above and beyond said expired contract. Plaintiffs attempt so to do by relying upon answers to interrogatories and asserting that their independent oral hirings included therein the terms and conditions of the labor agreement, including the right to severance pay.
I will refer to the interrogatories that counsel rely upon: Interrogatory No. 1, addressed to each one of the plaintiffs:
"Set forth the entire oral contract of employment it is alleged defendant entered with plaintiff on the date of plaintiff's employment as stated in Paragraph 2 of the complaint. Answer: Such contract of employment was that plaintiff was to perform work for the defendant as a Reporter in defendant's Editorial Department upon the terms and conditions set forth in the collective bargaining agreement between the Press-Union Publishing Company and Newspaper Guild of Philadelphia and Camden."
As I have said, each plaintiff has answered that way, except the plaintiff Lewallen, who states in response to the same interrogatory that
"such contract of employment was that the plaintiff was to perform work for the defendant as an Assistant Librarian at a weekly salary of $15.00. Plaintiff had been hired on February 27, 1930, and was laid off in February, 1933. Plaintiff was rehired on October 28, 1935. The plaintiff's contract of employment was later amended and modified by incorporation therein of terms and conditions set forth in the collective bargaining agreement between the Press-Union Publishing Company and the Newspaper Guild of Philadelphia and Camden."
So that by their answers to interrogatories the plaintiffs say that their oral contracts of individual hiring are subject *214 to and included therein in the Guild contract, which is the subject of controversy herein. Then they argue that their individual hirings and the terms and benefits thereof persisted beyond the date of the expiration of the Guild contract. In other words, even though the contract expired on August 22, 1952 and all rights therein terminated, that nevertheless those rights still survived by reason of these oral hirings referred to in the answers to interrogatories.
In my humble opinion, to allow the plaintiffs to make this claim would be allowing them to do indirectly what they could not do directly, i.e., extend the labor contract beyond its expiration date and to extend the rights contained therein beyond said date. I do not believe that any construction of said contract could possibly disclose any such intention. Certainly these plaintiffs had no inherent right to severance pay, nor did such right arise out of their original employment, at common law, with the defendant, except as it was provided in the labor contract or agreement.
In the case of J.I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 64 S.Ct. 576, 579, 88 L.Ed. 762 (1944), Justice Jackson said:
"Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. * * * After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. * * * the terms of the employment already have been traded out. There is little left to individual agreement except the act of hiring."
So in this case, the labor contract traded out all the terms of employment, and all that was left for the individual agreement was just the act of hiring. There has been no proof adduced before me to show the creation of an express or implied contract for the payment of severance pay after the expiration of the last contract; to wit, August 22, 1952.
Accordingly, I will hold that the plaintiffs' claim for severance pay from August 22, 1952 to the date of their *215 termination, should be dismissed and, in effect, a summary judgment entered for the defendant for so much of their claim.
In accordance with these conclusions, judgment may be entered for the plaintiffs for summary judgment, as I have previously indicated, up to August 22, 1952.
I suggest that counsel should consult and agree on the mathematical figures, in accordance with these conclusions, and I will sign such order as is necessary in the premises.