[No. 6630-1-II.   Division Two.   May 14, 1985.]

DORIS BARRETT, ET AL, *Appellants,* v. WEYERHAEUSER
COMPANY SEVERANCE PAY PLAN, ET AL,
*Respondents.*

*James M. Brown,* for appellants.

*Dean E. Peterson,* for respondents.

REED, J.—Doris Barrett appeals the trial court's judgment dismissing her action for severance pay under the Weyerhaeuser Company Severance Pay Plan (Plan). We affirm.

Doris Barrett worked for the Weyerhaeuser Company at its Cosmopolis plant from November 26, 1956, until April 11, 1980. In February 1980, Weyerhaeuser reorganized its operation. Mrs. Barrett was assigned a new position that combined new duties with some of the duties she previously had performed. After 3 days at her new position, Mrs. Barrett concluded the job imposed unreasonable demands upon her. She told Weyerhaeuser supervisory personnel about her objections and requested either a modification in her assigned duties or a different position. After her request was denied, Mrs. Barrett terminated her employment with Weyerhaeuser effective April 11, 1980. She sought severance benefits from the Plan, but her application was denied because Plan administrators deemed her termination voluntary.

Mrs. Barret brought this action against the Plan, contending that she had been terminated involuntarily. Although she admits she quit her job, she argues she did so under circumstances amounting to a constructive discharge. After a bench trial, the court found Mrs. Barrett had not proved her claim, and dismissed her action. She appeals.

A constructive discharge occurs "[w]here an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job . . ." *J.P.*

*Stevens & Co. v. NLRB,* 461 F.2d 490, 494 (4th Cir. 1972).[1] The doctrine has been applied to implement statutory and public policy limitations upon the usual employment at will contract[2] in cases where the employer allegedly engaged in illegal discrimination[3] or retaliation for protected conduct.[4] In such cases, a discharge that offends a statutory or public policy limitation subjects the employer to liability for dam-

---

[1] Authorities disagree about whether an employer's subjective intent to provoke the employee's resignation must be proved to establish a constructive discharge. *See generally* 3 A. Larson & K. Larson, *Employment Discrimination* § 86.50 (1984); 48 Am. Jur. 2d *Labor and Labor Relations* § 922 (1979); 3 Lab. L. Rep. (CCH) ¶ 4075 (1972); 1 Lab. Rel. Expediter (BNA) 159 (1972). Although our Supreme Court has indicated a willingness to accept the doctrine of constructive discharge, *see Glasgow v. Georgia–Pacific Corp.,* 103 Wn.2d 401, 408, 693 P.2d 708 (1985), the court has not yet decided whether an employer's intent to induce the employee's resignation is a necessary element of a constructive discharge. *Compare Nolan v. Cleland,* 686 F.2d 806 (9th Cir. 1982) *and Henson v. Dundee,* 682 F.2d 897, 907–08 (11th Cir. 1982) (employer's intent need not be proved to establish a constructive discharge), *cited with approval in Glasgow,* 103 Wn.2d at 408 n.6, *with Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir. 1981) (employer's intent to force employee to resign is a necessary element of constructive discharge), *also cited in Glasgow,* 103 Wn.2d at 408 n.6. Because our decision is founded on general principles of contract law, rather than on public policy restrictions on the usual terminable at will employment relationship, we do not here decide whether an intent to force a resignation is a necessary element of a constructive discharge.

[2] Employment contracts in Washington generally are terminable at will unless the parties agree otherwise. *See Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 226, 231–32, 685 P.2d 1081 (1984); *Roberts v. ARCO,* 88 Wn.2d 887, 891, 568 P.2d 764 (1977).

[3] *E.g., Nolan v. Cleland,* 686 F.2d 806 (9th Cir. 1982) (alleged sex discrimination); *Johnson v. Bunny Bread Co.,* 646 F.2d 1250 (8th Cir. 1981) (alleged racial discrimination); *Young v. Southwestern Sav. & Loan Ass'n,* 509 F.2d 140 (5th Cir. 1975) (alleged religious discrimination).

[4] *E.g., NLRB v. Century Broadcasting Corp.,* 419 F.2d 771, 780 (8th Cir. 1969) (retaliation because of threat to file grievance with union); *NLRB v. Armour & Co.,* 154 F.2d 570, 575–77, 169 A.L.R. 421 (10th Cir. 1945), *cert. denied,* 329 U.S. 732, 91 L. Ed. 633, 67 S. Ct. 92 (1946) (retaliation because of union activities); *United States v. Socorro,* 25 Fair Empl. Prac. Cas. 815, 819 (D.N.M. 1976) (retaliation because of spouse's sex discrimination complaint). *See generally* 48 Am. Jur. 2d *Labor and Labor Relations* § 922 (1979); 2 J. Jenkins, *Labor Law* § 7.3, at 269 (1974); 3 Lab. L. Rep. (CCH) ¶ 4075 (1972).

ages. *See Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 225–26, 685 P.2d 1081 (1984); 3 A. Larson & K. Larson, *Employment Discrimination* § 119.11 (1984). *See, e.g., Krystad v. Lau*, 65 Wn.2d 827, 840–46, 400 P.2d 72 (1965). The doctrine of constructive discharge has been used to determine when an employer has imposed intolerable working conditions upon an employee for reasons that violate those statutes or public policies. In the present case, there was *no* evidence that Mrs. Barrett was the victim of illegal discrimination or retaliation.

■ In contrast to damages resulting from a constructive discharge, "[severance] pay is not based upon a breach of contract [or other claim for damages], but is a 'claim within the terms of the hiring' . . ." *Owens v. Press Pub'g Co.*, 20 N.J. 537, 546, 120 A.2d 442, 447 (1956).

Severance pay has been defined as

terminal compensation measured by the service given during the subsistence of the contract, . . . payable on discharge from the employment . . ., according to the prescribed formula, a means of recompense for the economic exigencies and privations and detriments resulting from the permanent separation of the employee from service . . . In a real sense it is remuneration for the service rendered during the period covered by the agreement.

*Owens v. Press Pub'g Co.*, at 545–46.

[W]hile one of the objectives of . . . severance pay "is to ease the employee's financial burden while looking for a new job," such pay is also "partial compensation for loss of seniority rights; loss of possible pension rights; [and] compensation for retraining or acquiring new skills; . . ."

*Owens*, at 545, quoting *Ackerson v. Western Union Tel. Co.*, 234 Minn. 271, 48 N.W.2d 338, 25 A.L.R.2d 1063 (1951). *See also* 48A Am. Jur. 2d *Labor and Labor Relations* § 1834 (1979); 53 Am. Jur. 2d *Master and Servant* § 81 (1970); 51 C.J.S. *Labor Relations* § 254(c) (1967).

Thus, although the employment remains terminable at will, the employer has contracted to pay the employee severance compensation if he does not continue to provide

employment.[5] As part of an employment agreement, a severance pay plan is subject to the same rules of construction as are other contracts. *See Barclay v. Spokane,* 83 Wn.2d 698, 700, 521 P.2d 937 (1974); *Comfort & Fleming Ins. Brokers, Inc. v. Hoxsey,* 26 Wn. App. 172, 176, 613 P.2d 138, *review denied,* 94 Wn.2d 1008 (1980); *Owens v. Press Pub'g Co.,* 34 N.J. Super. 203, 111 A.2d 796, 798 (1955), *aff'd,* 20 N.J. 537, 120 A.2d 442 (1956); 51 C.J.S. *Labor Relations* § 254(c), at 1111 (1967). Severance benefits are payable, if at all, in accordance with the terms of the contract and intent of the parties. 51 C.J.S. *Labor Relations* § 254(c), at 1111–12 (1967).

The Weyerhaeuser Severance Pay Plan provides:

1.01 *Object and Purpose.* The Weyerhaeuser Company Severance Pay Plan . . . was established . . . to provide severance pay benefits for . . . employees . . . terminated by the Company as a result of job elimination or failure to qualify for job change as a result of reorganization or, at the request of the Company, because of marginal or unsatisfactory performance. . . .

2.01 *Eligibility for Participation.* A full–time salaried Employee of the Company . . . is eligible to participate in the Plan if all of the following requirements have been met:

(a) The Company has determined that the Employee is to be terminated as a result of job elimination or failure to qualify for job change as a result of reorganization or, at the request of the Company because of marginal or unsatisfactory performance. An Employee terminated for reasons of willful violation of Company rules or generally accepted standards of conduct, or for gross negligence in job performance, shall not be eligible to participate in the Plan.

(b) The Employee's service is being terminated for reasons other than retirement;

(c) The Employee has received written notice that his or her employment will be terminated and that he or she has been selected by the Company for participation

---

[5]The contingent obligation is analogous to compensation due an employee who, although hired for a definite term, is discharged before the end of that term. *See, e.g., Edwards v. Morrison–Knudsen Co.,* 61 Wn.2d 593, 379 P.2d 735 (1963).

under the Plan and meets such requirements as the Company may from time to time prescribe; and

(d) The Employee agrees to continue as an Employee until released by the Company;

(e) The Employee is not reemployed by the Company.

Participation in the Plan commences when an Employee receives the notice referred to in (c) above and signifies in writing his agreement to any terms and conditions contained in such notice.

Thus, Weyerhaeuser's express termination in accordance with the severance pay plan is a "condition" of the Plan's duty to pay severance compensation. *See Ross v. Harding*, 64 Wn.2d 231, 236, 391 P.2d 526 (1964); *Partlow v. Mathews*, 43 Wn.2d 398, 406, 261 P.2d 394 (1953); *Silverdale Hotel Assocs. v. Lomas & Nettleton Co.*, 36 Wn. App. 762, 770, 677 P.2d 773, *review denied*, 101 Wn.2d 1021 (1984); *United States v. Schaeffer*, 319 F.2d 907, 911 (9th Cir. 1963), *cert. denied*, 376 U.S. 943, 11 L. Ed. 2d 767, 84 S. Ct. 798 (1964); *Adams v. Jersey Cent. Power & Light Co.*, 36 N.J. Super. 53, 114 A.2d 776, 785 (1955), *aff'd*, 21 N.J. 8, 120 A.2d 737 (1956). *See generally* E. Farnsworth, *Contracts* § 8.2 (1982); Restatement (Second) of Contracts § 224 (1981). By its terms, the Plan does not provide severance benefits to an employee who resigns. Mrs. Barrett argues that she resigned involuntarily and therefore is entitled to recover severance benefits.

█ It is undisputed that Weyerhaeuser did not expressly terminate Mrs. Barrett in accordance with the severance pay plan. Therefore, a condition of the Plan's obligation to pay severance compensation did not occur. However, Washington courts have held that in every contract there is an implied covenant of good faith and fair dealing that obligates the parties to cooperate with one another so that each may obtain the full benefit of performance.[6] *Lonsdale v. Chesterfield*, 99 Wn.2d 353, 357,

---

[6] Our recognition of the obligation of good faith in the performance of express terms in employment contracts should not be read to endorse the view that an implied covenant of good faith and fair dealing limits an employer's discretion in terminating an at will employee, nor that a "bad faith" discharge is actionable in

662 P.2d 385 (1983); *Miller v. Othello Packers, Inc.,* 67 Wn.2d 842, 844, 410 P.2d 33 (1966); *Matson v. Emory,* 36 Wn. App. 681, 686, 676 P.2d 1029 (1984); *CHG Int'l, Inc. v. Robin Lee, Inc.,* 35 Wn. App. 512, 515, 667 P.2d 1127, *review denied,* 100 Wn.2d 1029 (1983).

Hence, failure or nonoccurrence of a condition will not excuse the promisor's performance if the condition's failure was the fault of the promisor. *CHG Int'l, Inc. v. Robin Lee, Inc.,* 35 Wn. App. at 515; *Cavell v. Hughes,* 29 Wn. App. 536, 540, 629 P.2d 927 (1981); *Refrigeration Eng'g Co. v. McKay,* 4 Wn. App. 963, 969–70, 486 P.2d 304 (1971). If Weyerhaeuser effectively discharged Mrs. Barrett, its failure to follow the formal discharge procedures would not prevent her from recovering severance benefits.

A discharge may occur when the employer, by words or acts, indicates an intention to dispense with the employee's services.[7] 48 Am. Jur. 2d *Master and Servant* § 922 (1979); 56 C.J.S. *Master and Servant* § 40(b) (1948). *See also Putnam v. Lower,* 236 F.2d 561, 566 (9th Cir. 1956). Thus, an employer may discharge an employee by intentionally precipitating a resignation, though formally retaining the employee in an attempt to avoid liability for compensation under a severance pay plan.

An employer generally may assign an employee any duties that were within the contemplation of the parties at the time of the hiring. *See generally* 53 Am. Jur. 2d *Master and Servant* § 44 (1970); 3A A. Corbin, *Contracts* § 683 (1960); 56 C.J.S. *Master and Servant* §§ 40(b), 63 (1948); 9 S. Williston, *Contracts* § 1013C (3d ed. 1967); Annot., *Reduction in Rank or Authority or Change in Duties as*

---

tort. *See Thompson v. St. Regis Paper Co.,* 102 Wn.2d at 227, 231–33. *See generally* 3 A. Larson & K. Larson, *Employment Discrimination* §§ 118.21, 119.12 (1984). Our holding does not inject substantive terms into the parties' contract, but only requires that the parties to an employment contract perform in good faith the obligations imposed by their agreement.

[7]Thus, cases that apply the doctrine of constructive discharge may provide guidance in determining whether an employer has indicated an intention to discharge an employee.

*Breach of Employment Contract,* 63 A.L.R.3d 539 (1975). However, a change in an employee's duties to put them outside of those contemplated at the time of hiring may indicate an employer's intention to terminate the employee. *See Brock v. Mutual Reports, Inc.,* 397 A.2d 149, 152 (D.C. 1979) (employer breached employment contract for particular position by demoting employee; breach constituted "constructive discharge"); *In re Board of Directors,* 47 Wn.2d 56, 59, 287 P.2d 105 (1955) (demotion of employee hired for particular position constitutes breach of employment contract); 3 Lab. L. Rep. (CCH) ¶ 4075, at 9180–81 (1972) (demotion or abuse inducing resignation constitutes constructive discharge).

The parties' intent regarding the nature and circumstances of employment must be determined by examining the employment contract as a whole. *See McIntyre v. Fort Vancouver Plywood Co.,* 24 Wn. App. 120, 127, 600 P.2d 619 (1979); 53 Am. Jur. 2d *Master and Servant* § 44 (1970); 51 C.J.S. *Labor Relations* § 254(c), at 1111 (1967); 56 C.J.S. *Master and Servant* § 63 (1948). A reading of the "Object and Purpose" section of the Weyerhaeuser Severance Pay Plan reveals that the Plan contemplates employee reassignments without express restrictions. Thus, Mrs. Barrett's reassignment to new duties, even if they were more burdensome, was not outside of the assignments contemplated by the parties' employment contract, and did not alone indicate an intent to discharge her. Mrs. Barrett failed to prove such an intent. Although there was conflicting evidence whether the new duties reasonably could be performed, there is substantial evidence supporting the trial court's findings that Weyerhaeuser supervisory personnel asked Mrs. Barrett's cooperation while they determined whether the duties of the newly created position could be performed, and that no Weyerhaeuser employee criticized Mrs. Barrett's performance at the new job. Weyerhaeuser had no duty to provide another position for Mrs. Barrett after she rejected the job to which she was assigned, and there was testimony supporting the trial court's finding

that no such alternative was available. These findings support the trial court's conclusion that Weyerhaeuser did not "constructively discharge" her. The agreed upon condition of discharge having failed, Mrs. Barrett was not entitled to severance benefits.

Moreover, the trial court found that Mrs. Barrett's resignation was voluntary. A voluntary resignation occurs when an employee abandons the employment because of a desire to leave, including such a desire motivated by a dissatisfaction with working conditions. 56 C.J.S. *Master and Servant* § 40(a) (1948). Even when circumstances exist that would justify a finding of discharge, an employee's resignation may be voluntary if it was not prompted by the employer's oppressive actions. *See, e.g., Henson v. Dundee,* 682 F.2d 897, 907–08 (11th Cir. 1982). 3 Lab. L. Rep. (CCH) ¶ 4075, at 9180 (1972). Mrs. Barrett resigned after only 3 days at her new position. Substantial evidence supports the trial court's findings that Mrs. Barrett's experience with the new position was too limited to justify her conclusion that the new duties were unreasonable, and that her resignation was voluntary. We therefore will uphold those findings. *See Allen v. Seattle Police Officers' Guild,* 100 Wn.2d 361, 378, 670 P.2d 246 (1983); *McGary v. Westlake Investors,* 99 Wn.2d 280, 285, 661 P.2d 971 (1983); *Bell v. Hegewald,* 95 Wn.2d 686, 688, 628 P.2d 1305 (1981). Mrs. Barrett is not entitled to receive severance pay from the Plan.

Affirmed.

WORSWICK, C.J., and ALEXANDER, J., concur.