

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2013 MAY 28 AM 8: 32

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Nebraska insurance company; and LAWYERS TITLE INSURANCE CORPORATION, a Nebraska insurance company, | ) ) ) ) ) ) | NO. 68547-3-I<br><br>DIVISION ONE |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| SOUNDBUILT NORTHWEST LLC, | ) ) | FILED: May 28, 2013 |
| Respondent. | ) ) ) | |

LAU, J. — This case involves a breach of settlement claim.[1] After our decision in Sound Built Homes, Inc. v. Dale Alan Land Development Co., noted at 137 Wn. App. 1055, 2007 WL 959942, Soundbuilt Northwest LLC and Commonwealth Land Title Insurance Company entered into a settlement agreement that required Commonwealth to pay Soundbuilt an additional sum after seeking indemnity from a third party. Frustrated by perceived delays, Soundbuilt moved to enforce the settlement agreement

---

[1] There is no question over the settlement's validity, existence, or material terms. Indeed, the trial court approved the reasonableness of the settlement agreement on Soundbuilt's motion.

68547-3-I/2

through CR 56 summary judgment procedure. The trial court granted summary judgment and entered judgment against Commonwealth for $4,031,409.77, including attorney fees, costs, and interest. Because material fact issues remain as to whether Commonwealth breached the settlement agreement when it allegedly failed to perform according to its terms and because the motion procedure here prevented Commonwealth from asserting claims and defenses, we reverse and remand for trial and further proceedings consistent with this opinion. The trial court is also instructed to vacate the March 16, 2012 judgment. We reverse the fees and costs award to Soundbuilt and award appeal fees and costs to Commonwealth, subject to compliance with RAP 18.1.

## FACTS[2]

In 2004, the Dale Alan Land Development Company (DALD) and its principal, Greg Newhall, agreed to sell certain property in Covington, Washington, to Soundbuilt Northwest LLC. Instead, it sold the property to a different land developer, Chelan Homes Inc., for an increased price. Soundbuilt sued DALD for repudiation of the purchase and sale agreement and recorded a lis pendens against the property. As part of the DALD/Chelan transaction, Chelan obtained a title insurance policy from Commonwealth. Due to the lis pendens, Commonwealth conditioned issuance of its title policy on the entry of an indemnity agreement with DALD. Under this agreement, DALD agreed to indemnify Commonwealth and hold it harmless from any loss or liability arising out of the policy. Chelan built and sold 22 homes. Commonwealth agreed to

_____

[2] The underlying facts of this case are discussed in Sound Built, noted at 137 Wn. App. 1055. We repeat only the facts necessary to resolve this appeal.

-2-

insure title on behalf of the purchasers.[3]  Soundbuilt prevailed on its repudiation claim, and the trial court ordered specific performance of the purchase and sale agreement (PSA).  We affirmed DALD's appeal of the specific performance order.

When Soundbuilt sought to enforce the specific performance order against the 22 homeowners, Commonwealth intervened.  To prevent enforcement of the specific performance order, Commonwealth entered into a settlement agreement with Soundbuilt in July 2008.  Under the agreement, Commonwealth immediately paid Soundbuilt $5 million to resolve Soundbuilt's claims.  In exchange for this payment, Soundbuilt agreed to transfer to Commonwealth "the right, title, and interest" of Soundbuilt in the present specific performance lawsuit, the original property PSA, and the lis pendens filed by Soundbuilt.

The agreement also required Commonwealth to obtain a court ruling that DALD/Newhall were obligated under the indemnity agreement to indemnify Commonwealth for all settlement funds it paid to Soundbuilt under the settlement agreement.  The settlement agreement also contained a "Contingent Payment Term." This term required Commonwealth to pay Soundbuilt up to an additional $3 million depending on the indemnity litigation outcome with DALD/Newhall.  If Commonwealth obtained an indemnity judgment against DALD/Newhall for $5 million or less, Commonwealth would owe no additional amounts to Soundbuilt.  Payment of any additional sums was expressly conditioned on entry of a "final, non-appealable order of the Washington courts (including orders of dismissal)" against DALD/Newhall.  The settlement agreement also obligated Commonwealth to "use its best reasonable efforts

---

[3] The policies were issued by Transnation Title Insurance Company, a Commonwealth affiliate.  In this opinion, we refer to Transnation as Commonwealth.

to avoid continuance [of] any of the proceedings, either before the trial court or on appeal, needed to obtain a final, non-appealable order . . . ." The parties also agreed, "Time is of the essence in the performance of the obligations set forth in the agreement."

In accordance with the settlement agreement's assignment provision, the trial court entered an agreed order substituting Commonwealth as plaintiff in place of Soundbuilt in the present specific performance suit against DALD.[4] The case caption was also amended to reflect this substitution of parties. The substitution order expressly provided that Soundbuilt's interest in the ongoing specific performance lawsuit was limited to obtaining a reasonableness determination on the settlement agreement. The settlement agreement's assignment provision transferred all rights in this lawsuit to Commonwealth.[5] Commonwealth moved successfully for summary judgment on its indemnity claim against DALD/Newhall, requesting judgment for $8 million. This amount included the original $5 million payment to Soundbuilt discussed above and the additional $3 million available to pay Soundbuilt under the settlement agreement's contingent payment term. The trial court determined that DALD/Newhall was obligated to pay Commonwealth the full $8 million indemnity amount, plus additional attorney fees and costs.

---

[4] Following entry of the substitution order, the case caption indicated that Commonwealth was a plaintiff in the main claim against DALD (formerly Soundbuilt's specific performance suit) and a third party plaintiff in its indemnity claim against DALD/Newhall. Both claims were captioned under King County Superior Court No. 04-2-09599-9 KNT.

[5] Under the settlement agreement, Soundbuilt retained limited rights to (1) collect an additional $3 million from Commonwealth, (2) collect additional money from three existing judgments, and (3) review Commonwealth's prefiling pleadings.

Newhall declared bankruptcy before the court entered its final order on DALD/Newhall's liability to Commonwealth. The bankruptcy court granted Commonwealth relief from the automatic bankruptcy stay to allow for entry of a final judgment on the summary judgment order. The trial court entered a final judgment against DALD/Newhall for $8 million, plus prejudgment interest, attorney fees, and costs. Newhall appealed the summary judgment order to this court. Meanwhile, the bankruptcy trustee and Soundbuilt reached an agreement. In exchange for obtaining the right to dismiss the appeal, Soundbuilt agreed to assign to the bankruptcy estate the first $225,000 of the $3 million payment Soundbuilt expected to receive from Commonwealth under the settlement agreement. As a creditor in the Newhall bankruptcy estate, Commonwealth objected to this agreement on the basis that the trustee failed to give proper notice to creditors and failed to demonstrate the agreement's compliance with certain bankruptcy rules. In May 2011, the bankruptcy court approved the agreement over Commonwealth's objection.

After the United States District Court granted Commonwealth's motion for an emergency stay, Soundbuilt and the trustee agreed to terminate their agreement. Frustrated by delays it attributed to Commonwealth, Soundbuilt moved the trial court to enforce the settlement agreement with Commonwealth through a summary judgment procedure. Soundbuilt's summary judgment motion argued that Commonwealth's tactics in the bankruptcy proceedings breached its implied duty to use best efforts to seek indemnity. Soundbuilt requested the court to award it $3 million, plus attorney fees, costs, and accrued interest against Commonwealth. The trial court denied

Soundbuilt's motion without prejudice to renew it, citing the pendency of the Newhall indemnity appeal.

Soundbuilt renewed its motion to enforce the settlement agreement through summary judgment procedure. It argued that Commonwealth breached both the express terms of the settlement agreement and the implied covenant of good faith and fair dealing by deliberately engaging in dilatory conduct:

> Commonwealth's conduct here is clearly in breach of its obligations under the Commonwealth/[Soundbuilt] Agreement, including the implied covenant of good faith and fair dealing. Commonwealth's express undertaking was to expeditiously seek a resolution of the Newhall Appeal establishing Newhall's liability to Commonwealth under the indemnity. Commonwealth's conduct, in effect, precludes the occurrence of the condition to performance of the final payment obligation to [Soundbuilt] . . . . Commonwealth should not be allowed to assert its obligation to pay is not mature when it is affirmatively acting to block or prevent the occurrence of the condition which would trigger its obligation to pay.

Soundbuilt argued that "the only effective remedy available to [Soundbuilt] is for this Court, which found the Commonwealth/[Soundbuilt] Agreement to be reasonable in the first place, to enforce Commonwealth's immediate payment to [Soundbuilt] in the amount of $3 million, plus accrued interest, late fees, attorney's fees and costs." Soundbuilt relied on In re Marriage of Ferree, 71 Wn. App. 35, 856 P.2d 706 (1993), a case construing CR 2A, to argue that "[s]ettlements may be enforced in this action . . . and determined by a procedure akin to summary judgment."

Soundbuilt and the trustee reached a revised agreement similar in its terms to their original proposed agreement. The bankruptcy court approved the revised agreement over Commonwealth's objection. Following entry of the approval order, the trustee moved under RAP 18.2 to withdraw the pending Newhall indemnity appeal. We granted the motion in a subsequent notation ruling.

Before our mandate was issued on the Newhall appeal, the court granted

Soundbuilt's summary judgment motion, finding "no genuine issue of material fact that

Commonwealth has breached the terms of the [Soundbuilt]/ Commonwealth Agreement

as a matter of law . . . ." It explained:

> [Soundbuilt] . . . became entitled to full payment of the balance of the sums due [Soundbuilt] under the terms of the Commonwealth/[Soundbuilt] Agreement on May 6, 2011, when the United States Bankruptcy Court approved the Trustee/[Soundbuilt] Agreement. Commonwealth's efforts to prevent the implementation of the Trustee/[Soundbuilt] Agreement were undertaken in bad faith, and are a breach of the Commonwealth/[Soundbuilt] Agreement.

The court ordered Commonwealth to pay Soundbuilt $3 million, plus interest, attorney

fees, and costs. It then entered a $4,031,409.77 final judgment against

Commonwealth. We issued our mandate in the Newhall appeal approximately two

months later. Commonwealth appeals.

## ANALYSIS

Commonwealth argues that the trial court deprived it of an opportunity to litigate

related claims and defenses by resolving nonparty Soundbuilt's breach of settlement

claim through a CR 2A motion to enforce.[6] Commonwealth also disputes the court's

liability and damages ruling. Soundbuilt responds that common local practice and

controlling authority support the motion procedure applied here.

We first address Commonwealth's liability and damages claim. Although styled

in name only as a motion to enforce settlement, neither party disputes that the motion

---

[6] "No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same." CR 2A.

was a summary judgment motion governed by CR 56. In Ferree, 71 Wn. App. at 43, a case defining the contours of CR 2A, Division Two of this court explained:

> When a moving party relies on affidavits or declarations to show that a settlement agreement is not genuinely disputed, the governing principles should be the same as those that apply in summary judgment proceedings. In summary judgment proceedings, the issue is whether a genuine dispute of fact exists. CR 56(c), (e). When a motion is made to enforce a settlement agreement on grounds that its existence and material terms are not genuinely disputed, the issue is also whether a genuine dispute of fact exists. Because the issue is the same, the governing rules should be the same.
>
> This reasoning is confirmed by the fact that summary judgment procedures are routinely applied to most agreements when the issue is whether a genuine dispute of fact exists.

We review an order granting summary judgment de novo. Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). We will affirm the trial court if, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, we determine that no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. Jones, 146 Wn.2d at 300-01; CR 56(c). "The moving party has the burden of showing that there is no genuine issue as to any material fact." Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 70, 170 P.3d 10 (2007).

"There is in every contract an implied duty of good faith and fair dealing . . . [that] obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." Badgett v. Sec. State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). This duty "arises only in connection with terms agreed to by the parties" and does not "'inject substantive terms into the parties' contract.'" Badgett, 116 Wn.2d at 569 (quoting Barrett v. Weyerhaeuser Co. Severance Pay Plan, 40 Wn. App. 630, 636 n.6, 700 P.2d 338 (1985)). Our Supreme Court has "consistently held there is no

'free-floating' duty of good faith and fair dealing that is unattached to an existing contract." Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 177, 94 P.3d 945 (2004). "Whether a party has breached a contract is a question of fact." Frank Coluccio Constr. Co. v. King County, 136 Wn. App. 751, 762, 150 P.3d 1147 (2007). "More generally, though, good faith is evaluated by an examination of the circumstances surrounding its application and the context in which it is asserted. Consequently, the determination of good faith and fair dealing is an issue for the trier of fact." 25 DAVID K. DEWOLF, KELLER W. ALLEN, & DARLENE B. CARUSO, WASHINGTON PRACTICE; CONTRACT LAW AND PRACTICE: § 5.12, at 92 (2012-13 Supp.).

Soundbuilt argued that Commonwealth breached its duty to seek indemnity from DALD/Newhall "as soon as reasonably possible" and to use "best reasonable efforts to avoid continuance [of] any of the proceedings . . . ." "Commonwealth is deliberately acting against its own interests as a creditor of the Newhall Bankruptcy Estate in order to further its interests as a debtor to [Soundbuilt] under the Commonwealth/[Soundbuilt] Agreement. The result is delay for delay's sake." Soundbuilt also argued that Commonwealth breached the implied duty of good faith and fair dealing. It argued, "Commonwealth's opposition to the approval of the Trustee/[Soundbuilt] Agreement can only be viewed as a mechanism for avoiding or delaying performance of its obligations under the [Settlement] Agreement and, therefore, bad faith." Soundbuilt submitted the declarations of its attorneys, Paul Brain, and David Kerruish, and exhibits to support these assertions.

Commonwealth filed two opposition briefs and the response declaration of bankruptcy attorney Jack Cullen, who represented Commonwealth in the Newhall

bankruptcy proceedings. Cullen's declaration, viewed in the light most favorable to Commonwealth, raises genuine fact issues regarding Soundbuilt's claim that Commonwealth engaged in bad-faith tactics designed to "actively thwart[]" Soundbuilt's attempts to collect its conditional $3 million payment.

Cullen's declaration provides a procedural history and summary of Commonwealth's actions in the bankruptcy proceedings and includes the entire bankruptcy docket. Cullen specifically addressed Soundbuilt's intentional delay claims. For example, he testified in part, "[I]n each and every instance where this matter was delayed or a continuance was requested, the request came from the Trustee's attorneys, not Commonwealth."

> Second, significant delays were also occasioned by the Trustee's "cleaning up" of the bankruptcy estate to address the legitimate concerns of Commonwealth regarding the proposed settlement with Sound Built and whether that settlement may or may not have been in the best interest of creditors. Commonwealth's concerns were found meritorious on appeal to the United States District Court. The Trustee's actions in responding to Commonwealth's objections made clear that the Trustee also conceded the merits of these concerns, and only after they were raised did the trustee do the work necessary to resolve the financial analysis of the settlement to the creditors of the bankruptcy estate.
>
> Third, it was not until the last claim order was entered that the economics of the proposed Sound Buil[t] settlement become clear, leaving only a few remaining issues to be heard at the December evidentiary hearing (a hearing that Commonwealth did not request). Those issues included the merits of a transaction whereby Sound Built did not agree to pay the Trustee any money to dismiss the appeal, but instead agreed only to pay the estate money if and only if Sound Built received money from Commonwealth pursuant to the settlement. These matters were resolved by the bankruptcy court, and Commonwealth has not appealed those findings.

He also testified that (1) Commonwealth sought relief from the automatic stay and successfully obtained a final judgment against DALD/Newhall on Commonwealth's indemnity claim, (2) the trustee delayed approval of the revised Soundbuilt/Trustee

agreement by requesting an evidentiary hearing, (3) the bankruptcy court held an evidentiary hearing on its own initiative, and (4) Commonwealth did not appeal the bankruptcy court's December 2011 order approving the revised Soundbuilt/Trustee agreement.

Our de novo review of the summary judgment record demonstrates the existence of genuine material fact issues on whether Commonwealth's actions in the Newhall bankruptcy proceeding breached the settlement agreement and its duty of good faith and fair dealing. Cullen's declaration testimony and the bankruptcy docket set forth specific facts that sufficiently rebut and conflict with Soundbuilt's contentions that Commonwealth breached the settlement agreement and acted in bad faith through purposeful delays to further its own financial interest. We conclude the trial court erred when it granted, as a matter of law, summary judgment in Soundbuilt's favor on its breach of settlement claim.[7] We reverse and remand for trial.

We next address Commonwealth's claim that the motion procedure here impaired its right to fully litigate and defend against Soundbuilt's breach claim. While CR 2A contemplates the use of summary judgment procedure in appropriate cases, the rule is not a substitute for trial where, as here, there is a legitimate breach of contract dispute. On the motion procedure, the trial court commented:

> I think it was actually a smart move on [Soundbuilt's] part to make this motion [to enforce] right now rather than have to go through a lawsuit to determine whether or not there's a breach of contract and then file a summary judgment motion and everything else. I don't—I don't criticize that. I think, quite frankly, strategically it was an excellent move.

---

[7] The trial court's order granting summary judgment stated in part: "Commonwealth's efforts to prevent implementation of the Trustee/SBNW Agreement were undertaken in bad faith and are a breach of the Commonwealth/SBH Agreement."

Verbatim Report of Proceedings (VRP) (June 29, 2011) at 23.

Soundbuilt cites no authority that precludes a party against whom a breach of contract claim is alleged from asserting claims and defenses. Indeed, there can be no legitimate dispute that if Soundbuilt had commenced an independent breach action, Commonwealth would be entitled to answer the complaint, plead counterclaims and defenses, conduct discovery, and demand trial by jury.[8] We conclude the trial court erred when it summarily determined that Commonwealth was in breach of the settlement agreement without full consideration of its potential claims and defenses.[9]

On remand, the trial court is instructed to grant Commonwealth leave to assert claims and defenses.[10]

## ATTORNEY FEES ON APPEAL

Both parties request attorney fees under RAP 18.1, which authorizes an award where "applicable law grants to a party the right to recover reasonable attorney fees or

---

[8] During summary judgment argument below, Soundbuilt's trial counsel asked the trial court, "I know the first thing my client is going to ask me is whether or not we're precluded from initiating a separate action for breach of contract." The court responded, "No, not at all." VRP (June 29, 2011) at 22.

[9] The trial court's summary determination that Commonwealth was in breach of the settlement agreement was also questionable because Soundbuilt was not a party in the case and had no pending claims when it filed the summary judgment motion. As discussed above, Soundbuilt assigned all of its rights in the case to Commonwealth, with certain limited exceptions. As a practical consequence of trial court error, Commonwealth could not plead claims and defenses against nonparty Soundbuilt. CR 25(c) provides in part: "In case of any transfer of interest, the action may be continued by or against the original party unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

[10] We express no opinion on the merits of Commonwealth's proposed claims and defenses. We do note, however, that Commonwealth's alleged claims and defenses arise from the same core facts as Soundbuilt's breach claim.

expenses on review . . . ." RAP 18.1. As applicable law, the parties cite a fee provision in the settlement agreement that states, "In the event a party takes action to enforce any of the terms of this Agreement, including action in the United States Bankruptcy Court, the prevailing party shall be awarded its costs, litigation expenses and reasonable attorney's fees." As the prevailing party on appeal, Commonwealth is awarded reasonable attorney fees, costs, and litigation expenses on appeal, subject to compliance with RAP 18.1.

## CONCLUSION[11]

For the reasons discussed above, we reverse the trial court's summary judgment order and the fees and costs award to Soundbuilt with instructions to vacate the March 16, 2012 judgment. We remand for trial and further proceedings consistent with this opinion and award fees and costs to Commonwealth under RAP 18.1.

_____ Jau, J. _____

WE CONCUR:

_____          _____
                           Becker, J.

---

[11] We do not address the broader question of whether CR 2A's summary procedure applies to resolve a breach of settlement claim.