94 P.3d 945 (2004)
152 Wash.2d 171
Certification from the United States Court of Appeals for the Ninth Circuit in KEYSTONE LAND & DEVELOPMENT COMPANY, Appellant,
v.
XEROX CORPORATION, Appellee.
No. 74904-3.
Supreme Court of Washington, En Banc.
Argued May 11, 2004.
Decided July 22, 2004.
*947 Eric Clayton Frimodt, Inslee, Best, Doezie & Ryder, P.S., Bellevue, for Appellant.
Larry John Smith, Estera Felice Gordon, Graham & Dunn, P.C., Seattle, for Appellee.
CHAMBERS, J.
Keystone Land & Development Company (Keystone) claims Xerox Corporation (Xerox) breached two separate contracts: one to sell its Tukwila facility to Keystone and one to negotiate in good faith a purchase and sale agreement for the facility. The United States District Court for the Western District of Washington granted Xerox's motion for summary judgment and dismissed Keystone's claims under both contracts. Keystone appealed to the United States Court of Appeals for the Ninth Circuit, which affirmed summary judgment dismissal of Keystone's claims under the substantive contract but seeks this court's answers to two certified questions before deciding the remaining issue on appeal.
(1) Will Washington contract law recognize and enforce an agreement, whether implicit or explicit, between two or more parties to negotiate a future contract under the circumstances presented in this case?
(2) If such a contract can exist, what is the proper measure of damages for the breach of a contract to negotiate?
Keystone Land & Dev. Co. v. Xerox Corp., 353 F.3d 1093, 1098 (9th Cir.2003).[1] We do not reach the issue of whether Washington contract law will ever recognize and enforce an agreement to negotiate a future contract but answer the first question, under the circumstances presented in this case, no. We find it unnecessary to reach the second certified question.

FACTS
Xerox decided to sell and leaseback a facility it owned in Tukwila, Washington. Xerox's brokers[2] sent out detailed information packets to prospective buyers, including Keystone, and requested letters of intent containing net purchase price and key deal points. Xerox received many proposals. It was most interested in the proposals received from Keystone and the City of Tukwila and directed its local broker, Kidder, to seek final, best offers from both. Parallel negotiations occurred with Keystone and the City of Tukwila.[3] Keystone claims that the exchange of letters between its broker[4] and Xerox's local broker created two enforceable contracts.[5]
*948 Through Broderick, Keystone responded to the information packet it received and sent a letter to Kidder titled "offer of purchase." Excerpt of Record (ER) at 9-15. Kidder then sent a letter to Broderick and requested a "final and best offer" that would address some "critical issues," including the purchase price, rent, deposit, and closing date. ER at 93. Broderick responded with a letter back to Kidder amending the purchase price and noting the offer to purchase would expire if not accepted on or before April 16, 2001. On April 10, 2001, Kidder replied and noted that "Xerox is prepared to negotiate a Purchase and Sale Agreement with Keystone Development subject to two modifications to your Proposal."[6] On April 13, 2001,[7] Keystone's president acknowledged and accepted the modifications to its proposal. App. Keystone contends that all of the key terms of the substantive agreement were settled by Keystone's acceptance of the April 10, 2001, letter and that Xerox was obligated to prepare a purchase and sale agreement.

ANALYSIS
We begin by distinguishing between three different but similar types of agreements. The first type of agreement is an agreement to agree. An agreement to agree is "an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete." Sandeman v. Sayres, 50 Wash.2d 539, 541-42, 314 P.2d 428 (1957). Agreements to agree are unenforceable in Washington. Id. (citing cases).[8]
The second type of agreement is an agreement with open terms. Under an agreement with open terms, the parties intend to be bound by the key points agreed upon with the remaining terms supplied by a court or another authoritative source, such as the Uniform Commercial Code. E. Allan Farnsworth, Precontractual Liability and Preliminary Agreements: Fair Dealing and Failed Negotiations, 87 COLUM. L.REV. 217, 253 (1987) [hereinafter Preliminary Agreements].[9]
The third type of agreement is a contract to negotiate. In a contract to negotiate, the parties exchange promises to conform to a specific course of conduct during negotiations, such as negotiating in good faith, exclusively with each other, or for a specific period of time. Under a contract to negotiate, the parties do not intend to be bound if negotiations fail to reach ultimate agreement on the substantive deal. Preliminary Agreements, 87 COLUM. L.REV., at 263. In contrast to an agreement to agree, under a contract to negotiate, no breach occurs if the parties fail to reach agreement on the substantive deal. The contract to negotiate is breached only when one party fails to conform to the specific course of conduct agreed upon. No Washington court has directly addressed whether a contract to negotiate is independently enforceable.
Under the principle of freedom to contract, parties are free to enter into, and courts are generally willing to enforce, contracts that do not contravene public policy. Preliminary Agreements, 87 COLUM. L.REV. at 267. Xerox does not argue that contracts to negotiate are against public policy. Rather, it argues that, under existing Washington case law, when parties manifest, in any way, that legal obligations shall be deferred until a writing is made, preliminary *949 negotiations and agreements do not constitute a binding contract.
Keystone argues that Washington courts, while not deciding the issue, have implied the enforceability of a contract to negotiate. For example, in Badgett v. Security State Bank, 116 Wash.2d 563, 807 P.2d 356 (1991), borrowers sought to modify an existing loan agreement, and when the bank refused to consider the borrowers' proposal, the borrowers brought suit claiming the bank breached a duty to negotiate modifications in good faith. Id. at 566-67, 807 P.2d 356. In holding the bank was under no obligation to negotiate modifications in good faith, we implied that if there had been an express provision in the loan agreement imposing such a duty, then it would have been enforceable. Id. at 573, 807 P.2d 356 ("[T]he Badgetts are not asking this court to interpret any provision in the loan agreement as imposing a duty on the Bank to consider their proposals....").
Our holding in Badgett supports a conclusion that, under Washington contract law, a specific course of conduct agreed upon for future negotiations is enforceable when it is contained in an existing substantive contract. However, Badgett does not answer the question of whether an enforceable obligation to negotiate in accordance with an agreed upon course of conduct can exist independently from an existing substantive contract. Although there is a duty of good faith and fair dealing implied in all existing contracts, we have consistently held there is no "free-floating" duty of good faith and fair dealing that is unattached to an existing contract. E.g., id. at 569-70, 807 P.2d 356. The duty exists only "in relation to performance of a specific contract term." Id. at 570, 807 P.2d 356.
Washington follows the objective manifestation test for contracts. Wilson Court Ltd. P' ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 699, 952 P.2d 590 (1998). Accordingly, for a contract to form, the parties must objectively manifest their mutual assent. Yakima County Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 388, 858 P.2d 245 (1993). Moreover, the terms assented to must be sufficiently definite. Sandeman, 50 Wash.2d at 541, 314 P.2d 428 (observing if a term is so "indefinite that a court cannot decide just what it means, and fix exactly the legal liability of the parties," there cannot be an enforceable agreement). Additionally, the contract must be supported by consideration to be enforceable. King v. Riveland, 125 Wash.2d 500, 505, 886 P.2d 160 (1994). Washington's requirements for valid contract formation adequately address the primary concern of other courts that have considered the enforceability of contracts to negotiate. As stated by one federal court, the primary concern is to "avoid trapping parties in surprise contractual obligations." Teachers Ins. & Annuity Ass'n v. Tribune Co., 670 F.Supp. 491, 497 (S.D.N.Y.1987).
In order to answer the certified questions, we must first determine whether a contract to negotiate was formed under the circumstances of this case. Xerox claims that there was no manifestation of mutual assent to be bound to specific standards of negotiating conduct.[10] Generally, manifestations of mutual assent will be expressed by an offer and acceptance. City of Yakima, 122 Wash.2d at 388, 858 P.2d 245. Keystone identifies letters between the parties' brokers that it contends are an offer, counter-offers, and acceptance. However, Keystone fails to identify an offer and acceptance to be bound to specific standards of negotiating conduct for the formation of a separate substantive contract.
Alternatively, Keystone alleges that statements made by Xerox's brokers regarding Xerox's intentions to proceed with the negotiations amount to an unconditional commitment to prepare the purchase and sale agreement that would have formalized its alleged commitment to sell the facility to Keystone. The relevant statements are contained in the *950 April 10, 2001, letter from Kidder to Broderick. See App. First, Kidder states "Xerox is prepared to negotiate a Purchase and Sale Agreement with Keystone Development subject to two modifications to your Proposal." App. (emphasis added). At most, the statement is a manifestation of Xerox's intention to negotiate with Keystone. There is no objective manifestation by Xerox of an intent to be bound if Keystone accepts the modifications. See Pac. Cascade Corp. v. Nimmer, 25 Wash.App. 552, 556, 608 P.2d 266 (1980) (holding an intention to do something "is evidence of a future contractual intent, not the present contractual intent essential to an operative offer") (emphasis added). On the contrary, the statement evidences an intent not to be bound by expressly referencing the need for further negotiations. See Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 72 (2d Cir.1989) (holding "reference to a binding sales agreement to be completed at some future date" is evidence of a present intent not to be bound).
Second, Kidder states that if Keystone acknowledges acceptance of the modifications to its proposal "[w]e can then proceed immediately to draft the Purchase and Sale Agreement for review and execution." App. Again, this statement does not manifest a present contractual intent to be bound upon Keystone's acceptance. See Nimmer, 25 Wash.App. at 556, 608 P.2d 266. Rather, the statement is an objective manifestation of Xerox's intent not to be bound because of its express reference to a future binding agreement being "review[ed] and execut[ed]." App.; see Arcadian, 884 F.2d at 72.
We conclude that it is unnecessary to decide whether Washington will ever enforce a contract to negotiate in order to answer the first certified question. The exchange of letters with which we are presented does not constitute a contract to negotiate. The parties did not exchange promises to conform to a specific course of conduct during negotiations, such as negotiating in good faith, exclusively with each other, or for a specific period of time. Instead, the parties began negotiations to enter into a purchase and sale agreement. In the absence of objective manifestations of mutual assent to definite terms supported by consideration, no contract was formed. See King, 125 Wash.2d at 505, 886 P.2d 160; City of Yakima, 122 Wash.2d at 388, 858 P.2d 245; Sandeman, 50 Wash.2d at 541, 314 P.2d 428. There was never an agreement as to how the parties were required to proceed.
Keystone asks us to imply a duty to continue negotiations until a final agreement is reached. In fact, Keystone argues that the question before us is not whether the parties agreed to an enforceable duty to negotiate. Instead, it argues the question is "whether the negotiations between Keystone and Xerox had advanced to the point where the law should impose on the parties a `duty to go forward [.]'"[11] We decline to create and impose a duty to go forward in the absence of an enforceable contract. No contract was formed between Keystone and Xerox. At best, the circumstances of this case present an implied agreement to agree. We adhere to our long standing jurisprudence that agreements to agree are unenforceable. Sandeman, 50 Wash.2d at 541-42, 314 P.2d 428; Wharf Rest., Inc. v. Port of Seattle, 24 Wash.App. 601, 609, 605 P.2d 334 (1979); Johnson v. Star Iron & Steel Co., 9 Wash.App. 202, 206, 511 P.2d 1370 (1973).[12]

CONCLUSION
The circumstances of this case present us, at best, with an implied agreement to agree. We adhere to our long standing jurisprudence that agreements to agree are unenforceable. Consequently, our answer to the first certified question is no, Washington will not enforce a contract under the circumstances *951 of this case. We do not reach the question of whether contracts to negotiate are enforceable under Washington contract law because this case does not present a contract to negotiate. We find it unnecessary to reach the second certified question concerning the measure of damages.
ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, OWENS and FAIRHURST, JJ., concur.

NOTES
[1] After we heard oral arguments on the matter, upon Keystone's request, and over Xerox's objection, the Ninth Circuit issued an order clarifying its intent "to make the[se] certified questions dispositive of th[is] case," while acknowledging our ability to reformulate the questions and limit our opinion to "a general statement of Washington contract law." June 17, 2004 Order at 2. Following the Ninth Circuit's clarification order, Keystone moved this court for permission to submit supplemental briefing on the issue of whether we ought to limit our opinion to a general statement of Washington contract law. Because supplemental briefing is unnecessary, Keystone's motion for permission to submit supplemental briefs is denied.
[2] Xerox hired Jones Lang LaSalle, Inc. to sell the facility, and Jones associated with local real estate broker, Kidder Matthews & Sanger, Inc. (Kidder).
[3] On April 25, 2001, the City of Tukwila's broker responded with its final and best offer, which included a purchase price offer of $500,000 more than the offer made by Keystone. Additionally, the city revised its offer to include a longer leaseback term meeting Xerox's needs.
[4] Broderick Group, Inc. (Broderick).
[5] The District Court found, and the Ninth Circuit affirmed, no substantive contract for the sale and purchase of the facility was formed. Keystone Land & Dev. Co. v. Xerox Corp., 353 F.3d 1070, 1075 (9th Cir.2003) (hereinafter Keystone II).
[6] Appendix to this opinion (ER at 18) (hereinafter cited as "App.").
[7] Although the April 10, 2001, letter to Broderick stated that it will expire if not accepted by noon on April 12, 2001, Keystone's president unilaterally changed the expiration date to 5:00 p.m. on April 13, 2001.
[8] We note, however, that this line of cases has been distinguished from another line of cases in which the enforceability of contract terms to agree upon future rental rates contained within renewal options of completed lease agreements was established. See, e.g., Family Med. Bldg., Inc. v. Dep't of Soc. & Health Servs., 104 Wash.2d 105, 110, 702 P.2d 459 (1985).
[9] Keystone's arguments about the substantive contract appear to hinge on the formation of an agreement with open terms. As noted above, the federal courts have already held there was no binding agreement with open terms for the purchase and sale of the facility. See supra n. 5; see also Keystone II, 353 F.3d at 1075. This question is not before the court.
[10] Whether there was mutual assent is normally a question of fact for the jury. Sea-Van Invs. Assocs. v. Hamilton, 125 Wash.2d 120, 126, 881 P.2d 1035 (1994). A question of fact may be determined as a matter of law where reasonable minds could reach but one conclusion. Ruff v. King County, 125 Wash.2d 697, 703-04, 887 P.2d 886 (1995) (quoting Hartley v. State, 103 Wash.2d 768, 775, 698 P.2d 77 (1985)).
[11] Br. of Keystone Land & Dev. Co. at 32 (emphasis added).
[12] Compare also Coleman v. St. Paul & Tacoma Lumber Co., 110 Wash. 259, 270, 188 P. 532 (1920) (holding letters did not form a contract when the objective purpose was "to open negotiations which might possibly lead to a contract") and Weldon v. Degan, 86 Wash. 442, 450, 150 P. 1184 (1915) ("'"If any portion of the proposed terms [of the contract] are not settled or a mode agreed upon by which they may be settled, there is no agreement."'" (quoting 9 Cyc. 245) (alteration in original)).