# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JASON and RHIANNON LAWSON, )
                 )   No. 68317-9-I
        Respondents, )
                 )   DIVISION ONE
v.                 )
                 )   UNPUBLISHED OPINION
ANTHONY JAMES MARTYN, )
                 )   FILED: September 23, 2013
        Appellant. )
_____ )

LEACH, C.J. — Anthony Martyn appeals from a superior court decision upholding a small claims court judgment awarding Jason and Rhiannon Lawson damages for breach of contract. Following our de novo review, we agree with the trial court and conclude that Martyn breached an enforceable contract with the Lawsons when he failed to undertake a van conversion. We also agree that the Lawsons were entitled to the return of the deposit they paid toward the conversion costs. Accordingly, we affirm.

## FACTS

Jason and Rhiannon Lawson contacted Anthony Martyn about a custom van conversion project after seeing Martyn's advertisement on Craigslist. Following negotiations, primarily through e-mail, Martyn agreed to sell the Lawsons a 2007 Dodge Sprinter van and then convert the van to a custom camper in accordance with the Lawsons' specifications.

The parties' negotiations culminated in a bill of sale for the van that Martyn drafted and executed on September 27, 2010. The parties met on that date, and the Lawsons paid Martyn $28,000, the amount specified in the bill of sale.

On the same day, the parties signed an addendum to the bill of sale that Martyn drafted. The addendum recited that it "modifie[d] the Bill of Sale" and that the "details of the specific improvements contemplated by the parties" were set forth in the "attached Estimate of Camper Conversion Costs ('the Estimate')." Martyn agreed that he would "commence improvements within two weeks" of the sale of the van.

The estimate, which Martyn prepared and signed, listed the improvements to the van that he would perform. The estimate also specified the cost of the van as $23,610 "BEFORE CAMPER UPFIT"[1] and the cost of the "CAMPER UPFIT" as $11,725, for a "TOTAL COST OF FINISHED CAMPER" of $35,335.

After the transaction, the parties continued to communicate about the project, but Martyn did not begin the conversion. In November 2010, the Lawsons sought to cancel the conversion because Martyn had not yet started work. In response, Martyn claimed that the Lawsons had never expressed a "particular need for the conversion to be completed by any particular deadline within the next six months."

---

[1] The preconversion cost of the van originally included $200 to replace a side mirror. When Martyn failed to perform the work, the trial court reduced the van price to $23,410.

On November 30, 2010, Martyn informed the Lawsons that it "remains my desire to complete this project" and proposed to begin "physical modifications" to the van sometime after his return from a trip on December 12. On January 3, 2011, Martyn e-mailed the Lawsons that he had "finally finished the other project that had me tied up" and that he was now "able to devote my undivided attention to converting your van." Martyn indicated that he would begin the work in a few days after arranging for an indoor work space.

Martyn did not respond to repeated inquiries about the status of the conversion. On February 28, 2011, after the Lawsons had retrieved their van, Martyn e-mailed that he had "finally been able to make arrangements for indoor shop space" and would be able to start the conversion "later this week."

On April 1, 2011, the Lawsons filed a breach of contract action in Island County small claims court, alleging that Martyn had failed to undertake the van conversion. They requested damages, including $4,590, the portion of the $28,000 purchase price that was allocated to the conversion costs.

Following a bench trial on May 12, 2011, the district court commissioner concluded that the parties had entered into an enforceable agreement for the conversion of the van and had intended that $4,590 of the $28,000 purchase price would serve as a deposit toward the conversion costs. Because Martyn had not undertaken any work on the conversion, the court concluded that he had

breached the contract and that the Lawsons were entitled to return of the $4,590 plus $410 to replace the locks on the van when Martyn failed to return the keys.

Following de novo review, the superior court agreed with the district court commissioner and entered judgment for $5,000 plus costs and interest in favor of the Lawsons. Martyn now appeals to this court.

## DISCUSSION

### Standard of Review

The superior court reviews an appeal from a small claims decision de novo based on the record of the case before the district court.[2] We also review de novo the record before the district court.[3]

### Enforceability of the Addendum

Martyn contends the addendum to the bill of sale was unenforceable because it contemplated that the parties would negotiate a later agreement on the essential terms of the conversion. He argues that because the parties never reached an agreement on the design, specifications, and price of the conversion project, he had no obligation to commence work and therefore did not breach the contract.

Washington follows the objective manifestation test for contracts.[4] "Accordingly, for a contract to form, the parties must objectively manifest their

---

[2] RCW 12.36.055.
[3] See Bosnar v. Rawe, 167 Wn. App. 509, 510, 273 P.3d 488, review denied, 175 Wn.2d 1003 (2012); RCW 12.36.055.

mutual assent."[5] The terms of the agreement must be sufficiently definite to permit enforcement.[6] An "agreement to agree," which is "'an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete,'" is unenforceable.[7] "Whether an enforceable contract exists is a question of law that we review de novo."[8]

By its terms, the addendum expressly modified the bill of sale and specified that the parties' agreement involved the purchase and sale of the van "with certain added improvements and equipment to be installed by seller after the closing of the purchase of this vehicle by the buyer." Martyn agreed to begin the conversion within two weeks of the sale of the van and attempt to complete the conversion within four weeks, "subject only to delays which may be incurred by waiting for equipment or fixtures to be selected or provided by buyer." (Emphasis added.)

The addendum also expressly incorporated by reference the attached estimate,[9] which listed the cost of the van and the conversion work. In addition,

---

[4] Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 699, 952 P.2d 590 (1998).

[5] Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 177, 94 P.3d 945 (2004).

[6] Keystone, 152 Wn.2d at 178.

[7] Keystone, 152 Wn.2d at 175-76 (quoting Sandeman v. Sayres, 50 Wn.2d 539, 541-42, 314 P.2d 428 (1957)).

[8] Taufen v. Estate of Kirpes, 155 Wn. App. 598, 603, 230 P.3d 199 (2010).

[9] See W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc., 102 Wn. App. 488, 494, 7 P.3d 861 (2000) ("Incorporation by reference must be clear and unequivocal.").

the estimate specified in detail the work to be performed for the conversion, including the installation of seat swivels, solar roof panels, windows, roof vents, carpeting, power receptacles, wiring, propane tank, insulation, wall and ceiling panels, cabinets, water tanks, batteries and chargers, cabin heater, and curtain hardware. Each enumerated task on the estimate included a specific additional charge or noted that it was included in the conversion cost.

Martyn relies primarily on a provision in the addendum stating that the details of the conversion in the estimate "may change based on the actual design and specifications which have not yet been completed." But he fails to note that the provision references changes "based upon the buyer's preferences." (Emphasis added.) Consequently, the addendum contemplated that the Lawsons might make some changes to the equipment or fixtures to be installed, at an additional cost. But the parties agreed that any additional costs would not exceed the estimate by more than $1,000 without further written agreement. The mere fact that the parties' agreement provided for some future changes does not create an unenforceable "agreement to agree."

In summary, the addendum and estimate manifested the parties' agreement to all essential terms of the conversion project, including the sale of the van, the cost and timing of the conversion work, a precise description of the work to be performed, and the possibility that the Lawsons might change some of the details of the conversion. The terms of the agreement were sufficiently

certain to permit both sides to ascertain the existence of a breach and seek an appropriate remedy.[10] The trial court correctly determined that Martyn breached a binding contract when he failed to undertake any work on the conversion.

Cost of the Van

Martyn also contends that the trial court erred in determining that the parties allocated $4,590 of the van purchase price as a deposit toward the conversion costs. He argues that the parties' agreement did not include the sale of the van for less than the $28,000 specified in the bill of sale.

The primary goal in interpreting a contract is to ascertain the parties' intent.[11] We determine intent by reviewing "'the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'"[12] But a court may not use extrinsic evidence to "vary, contradict or modify the written word."[13] Ambiguities in contracts are resolved against the drafter.[14]

---

[10] See Andrus v. Dep't of Transp., 128 Wn. App. 895, 898-99, 117 P.3d 1152 (2005).

[11] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

[12] Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc., 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993) (quoting Berg v. Hudesman, 115 Wn.2d 657, 667, 801 P.2d 222 (1990)).

[13] Hollis v. Garwell, Inc., 137 Wn.2d 683, 695, 974 P.2d 836 (1999).

[14] State v. Skiggn, 58 Wn. App. 831, 838, 795 P.2d 169 (1990).

The addendum provided that "the purchase price indicated on the Bill of Sale is solely for the purpose of buyer's financing for the purchase of the vehicle without the improvements." Although this provision may not be completely clear when viewed in isolation, the estimate that Martyn drafted unambiguously specified that the cost of the van before conversion was $23,410. That provision was also consistent with the parties' negotiations leading up to the agreement.

In an e-mail dated September 22, 2010, five days before the parties signed the addendum, Martyn proposed that the parties "move forward [by] prepar[ing] a purchase contract for the van at a price that includes the van purchase plus a portion of the conversion cost, so that your credit union can close the deal right away." (Emphasis added.) On September 24, 2010, the Lawsons informed Martyn that they were "comfortable, with the contract and timeline in place, putting the [$4,590] of the $28,000 financed down as a deposit for the conversion." In response, Martyn did not dispute the Lawsons' understanding and confirmed that "the balance of your financed purchase price would be applied towards the conversion expenses, and we'd have an addendum to our Bill of Sale confirming that arrangement."

When viewed in context, the bill of sale, addendum, and estimate establish that the parties intended $4,590 of the $28,000 purchase price to be applied toward the conversion costs. Martyn's reliance on a September 24, 2010, e-mail from Rhiannon Lawson to her husband is misplaced. In the e-mail,

Lawson referred to the possibility that Martyn might fail to undertake the conversion and "just sell us a cargo van for [$]28,000." Viewed in context, however, the reference merely reflected Lawson's concerns about the absence of a written agreement specifying the timeline for the project and limiting the final costs. The parties addressed those concerns in the addendum and the estimate. Nothing in the e-mail contradicted the parties' subsequent agreement to allocate $4,590 of the purchase price to the conversion costs.

Affirmed.

_Leach, C. J._

WE CONCUR:

_____        _____