# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| FIFE PORTAL 140, LLC, a Washington Limited Liability Company, | No. 60044-7-II |
| Appellant, | |
| v. | |
| SUBWAY REAL ESTATE, LLC, a Delaware Limited Liability Company, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, P.J. – Fife Portal 140, LLC (Fife Portal) appeals the trial court's grant of summary judgment in favor of Subway Real Estate, LLC (Subway) in Fife Portal's unlawful detainer action. The unlawful detainer action arose out of a conflict regarding the commencement date of the lease agreement between Fife Portal and Subway.

Subway leased property from Fife Portal to sublease the premises to a franchisee, who would then operate a Subway branded restaurant on the premises. Subway and Fife Portal executed the lease in March 2017. The lease provided for an initial term of five years. Section R1 of a rider to the lease stated that the lease would commence when certain conditions were met: completion of construction, receipt of the necessary permits, and acceptance of the premises

by Subway, as evidenced by a letter of possession signed by both parties. The construction and permitting process was completed in June 2018 and the restaurant opened that month. But Fife Portal never signed the letter of possession mentioned in section R1.

The lease provided that Subway could renew the lease for an additional five year period with six months' notice, or within 10 days of Fife Portal's notice that it failed to renew. In September 2022, Subway sent notice that it was renewing the lease. Fife Portal informed Subway that it could not renew because the lease had expired and its notice was untimely.

In April 2023, Fife Portal served Subway notice to vacate the premises. This unlawful detainer action followed. Both parties filed motions for summary judgment, and the trial court granted summary judgment in favor of Subway and denied Fife Portal's motion.

Fife Portal appealed the trial court's summary judgment order to this court. While the appeal was pending, Fife Portal sold the property to JAMAT, LLC. This court allowed JAMAT to intervene in this appeal.

Even though Fife Portal no longer has a right to possess the property, we can grant relief because JAMAT will be bound by our decision. We hold that the trial court did not err when it granted summary judgment in favor of Subway because under the terms of section R1, the lease commenced in June 2018. Therefore, Subway timely renewed the lease.

Accordingly, we affirm the trial court's summary judgment order. This decision is binding on JAMAT.

FACTS

*Background and Lease Agreement*

Fife Portal owned a commercial property in Fife. In March 2017, Fife Portal entered into an agreement with Subway to lease commercial space on the property for a Subway branded

restaurant.  Subway planned to sublease the property to a franchisee, who would operate the Subway branded restaurant on the property.

The parties understood that the property would have to be modified to operate a Subway restaurant on the premises.  Fife Portal agreed to perform certain modifications to the property.  Subway's subtenant would complete other necessary modifications.

The agreement contained a master lease and a rider.  The terms in the rider controlled if they conflicted with the master lease.  Regarding the length of the lease, the master lease stated that the lease term consisted of an "Initial Term and any Extended Terms which may be provided for by a Rider."  Clerk's Papers (CP) at 137.  The initial term of the lease was five years.

Regarding when the lease commenced, section R1 of the rider stated,

> This Lease and all of its corresponding rights and obligations other than the payment of Rent shall commence when all of the following requirements have been met ("*Lease Commencement Date*"): 1) Completion of Landlord's work and delivery of possession, 2) Receipt by Tenant of all necessary approvals and permits and 3) *acceptance of the Premises by Tenant as evidenced by Tenant's written acknowledgement of receipt and acceptance of a letter of possession from Landlord* (Exhibit B).
>
> The Rent shall commence the earlier of ninety (90) days after the Lease Commencement Date, or upon Tenant's permits being signed off by the city ("Rent Commencement Date").
>
> The parties herein agree that, subject to the execution of this Lease, Tenant shall be entitled to the use and possession of the Premises for the purposes of renovation and remodeling.

CP at 152 (emphasis added).  Exhibit B, mentioned in section R1, is titled "LETTER OF POSSESSION" and stated,

> In accordance with the Lease Agreement between the parties dated ____ 20  , Landlord warrants by signature below that all of it's construction obligations under the lease are complete and the premises is hereby delivered to Tenant on ____ 20 . Execution of this Letter of Possession by Tenant shall signify the delivery of possession and acceptance of same by Tenant and satisfy the obligations of section of the lease.

CP at 161. Fife Portal states that exhibit B of the lease was a nonnegotiable requirement of Subway's. And Fife Portal states that exhibit B was added to protect Subway from lawsuits and for Subway's own recordkeeping purposes.

In addition, regarding possession, the lease stated that Subway was entitled to possession of the premises immediately, and occupancy before the lease commenced would not advance the termination date of the lease.

The lease gave Subway the option to renew the lease for three additional five year terms. Regarding Subway's right to exercise these options, the lease stated,

> In order for Tenant to exercise this Extension Term it will be required to give Landlord six (6) months prior written notice of its intent to exercise said option period. The Extension Term shall be based upon the same terms and conditions as the Initial Term, except that the Base Rent shall be adjusted as stated below. In the event Landlord does not receive Tenant's notice as stated above, Tenant shall not lose its options to renew unless and until the Tenant shall fail to give notice to Landlord within ten (10) days after receipt of written notice from Landlord citing Tenant's failure to exercise its option to renew.

CP at 148.

The lease also provided that if Subway remained in possession of the property after the lease expired, the lease converted to a month to month tenancy, with a higher monthly rent and all terms applicable to a month-to-month tenancy.

*Correspondence Between the Parties*

After Fife Portal and Subway entered into the lease agreement, Subway subleased the property to Sua Fife Subway, Inc (Sua). Sua was responsible for getting the required permits from the City of Fife. The buildout took longer than Fife Portal predicted.

The construction process was completed, and the city issued the necessary permits on June 13, 2018. Sua began operating the Subway branded restaurant the next day.

On June 22, Fife Portal's manager, George Humphrey, emailed Subway and Sua and told them that their "lease started Jan 1." CP at 453. On July 27, a managing agent for Fife Portal, Michelle Ryan, sent a letter to Sua and Subway demanding rent for January to August 2018 and stating that the "lease commencement date" was January 1, 2018. CP at 170.

Subway reached out to Fife Portal in September 2018 to memorialize the lease commencement date. Humphrey states that in response, he called a Subway representative and told them he would never agree to a different commencement date.

In April 2019, Subway asked Humphrey the date Fife Portal delivered the property so it could memorialize the lease's beginning and ending dates. Humphrey responded that it was memorialized the previous year.

That month, Subway also asked Ryan what date the premises was delivered to Subway. Ryan responded that the lease commenced on January 1, 2018, and would expire on December 31, 2022. Subway created and signed a possession letter with those dates, and sent it to Fife Portal. There is no evidence that Humphrey or any other Fife Portal employee ever signed the possession letter.

On September 12, 2022, Subway sent notice to Fife Portal stating that it was extending the lease for another five year term. The notice Subway sent stated that the extended lease would run from June 14, 2023, to June 13, 2028. On October 7, Fife Portal responded by stating that Subway had failed to renew the lease before the lease expired. Fife Portal identified a lease commencement date of March 7, 2017 in this communication. Subway and Sua received the letter denying Subway's renewal on October 17.

On October 18, Subway sent an email and a letter to Fife Portal stating that it was exercising its renewal option, this time with the new lease term running from January 1, 2023, to December 31, 2027. Fife Portal responded by stating that the lease already had expired.

Sua continued operating the Subway restaurant and continued to make the monthly rent payments. Fife Portal did not increase the monthly rent.

On April 18, 2023, Fife Portal notified Subway that it was terminating Subway's tenancy. Subway did not vacate the property.

*Trial Court Procedure*

Fife Portal filed this unlawful detainer action. In its complaint, Fife Portal sought a writ of restitution and damages. Subsequently, the parties both filed summary judgment motions.

The trial court granted Subway's motion for summary judgment and denied Fife Portal's. In its oral ruling, the trial court concluded that fixing the lease commencement date under section R1 of the rider was not an agreement to agree, and that the signed letter referenced in exhibit B was not a condition precedent to performance. The court also stated that Subway timely renewed the lease within 10 days of receiving written notice from Fife Portal that it did not exercise its option to renew. It declined to fix a lease commencement date.

Fife Portal appealed the trial court's grant of summary judgment in favor of Subway.

*Appellate Court Procedure*

After filing this appeal, Fife Portal purportedly sold the property it leased to Subway to JAMAT. Counsel for JAMAT represents that the sale occurred on December 6, 2024.[1]

---

[1] The sale is not in the trial court record. But both parties agree that the property has been sold, and the sale is noted on the Pierce County Assessor's website. This court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201(b)(2); *State v. Arlene's Flowers, Inc.*, 193 Wn.2d

Subsequently, JAMAT filed a motion to intervene as both plaintiff in the trial court and appellant in this court. A commissioner to this court denied this motion, informing JAMAT that if it wanted to substitute itself as a party on appeal, it had to do so under RAP 3.2.

JAMAT filed a motion to modify the commissioner's ruling, asserting that it was not seeking to intervene under RAP 3.2 but rather under CR 24(a) and (b). This court granted the motion to modify and permitted JAMAT to file a complaint in the superior court as requested. However, the order stated, "This court's allowance of this intervention does not impact this court's ability to assess all of the arguments raised in the briefs of the appellant and respondent." Ord. Granting Mot. to Modify Comm'r's Ruling (Oct. 9, 2025).

ANALYSIS

A.    LEGAL PRINCIPLES – UNLAWFUL DETAINER

Unlawful detainer proceedings are created by statute to provide an expedited way to resolve whether a landlord or a tenant has the right to possession of property. *Egbert v. Jorgensen*, 36 Wn. App. 2d 1, 20, 580 P.3d 1002 (2025). A tenant can be guilty of unlawful detainer when they,

> having leased property for an indefinite time with monthly or other periodic rent reserved, continues in possession thereof, in person or by subtenant, after the end of any such month or period, when the landlord, more than 20 days prior to the end of such month or period, has served notice (in manner in RCW 59.12.040 provided) requiring him or her to quit the premises at the expiration of such month or period.

RCW 59.12.030(2).

Unlawful detainer actions are " 'narrow' " and " 'limited to the question of possession and related issues such as restitution of the premises and rent.' " *Egbert*, 36 Wn. App. 2d at 20

---

469, 496, 441 P.3d 1203 (2019) (discussing that in some situations an appellate court may take judicial notice of facts). We take judicial notice of the fact that the property has been sold.

(quoting *Munden v. Hazelrigg*, 105 Wn.2d 39, 45, 711 P.2d 295 (1985)). The right to possession is the "primary issue" in an unlawful detainer action. *Angelo Prop. Co., LP v. Hafiz*, 167 Wn. App. 789, 808, 274 P.3d 1075 (2012).

B.      MOOTNESS – SALE OF PROPERTY

As a threshold matter, Subway argues that we can affirm the trial court's decision because Fife Portal sold the property at issue after it filed this appeal. An appeal is moot if we can no longer provide effective relief. *Dzaman v. Gowman*, 18 Wn. App. 2d 469, 476, 491 P.3d 1012 (2021). Arguably, the fact that Fife Portal no longer owns the property moots this appeal. But we conclude that we can grant effective relief.

Fife Portal concedes that it no longer has the right to possess the property at issue. Because Fife Portal no longer owns the property, it no longer has a right to have the matter of possession determined in an unlawful detainer action. However, JAMAT now owns the property and would be able to assert the same unlawful detainer claim as Fife Portal. And the court allowed JAMAT to intervene in this appeal, meaning that our decision will be binding on JAMAT. Therefore, we can grant effective relief.

Accordingly, we will address the merits of Fife Portal's appeal.

B.      SUBWAY'S SUMMARY JUDGMENT MOTION

Fife Portal argues that the trial court erred in granting summary judgment in favor of Subway because the lease had expired before Subway attempted to extend the lease for an additional five year term. Fife Portal claims that the lease commenced in March 2017, when the lease was executed. Therefore, Subway's attempted renewal in September 2022 occurred after the lease had expired. Subway argues that the lease commencement date was in June 2018 based on the provisions of section R1 of the rider or at least on January 1, 2018, a date that Fife Portal

insisted was the commencement date. We agree with Subway that the lease commenced in June 2018.

### 1. Summary Judgment Standard

We review summary judgment orders de novo. *Mihaila v. Troth*, 21 Wn. App. 2d 227, 231, 505 P.3d 163 (2022). We view all evidence in the light most favorable to the nonmoving party, including reasonable inferences. *Id*. Summary judgment is appropriate when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. *Id*. A genuine issue of material fact exists if reasonable minds can come to different conclusions on a factual issue. *Id*. But summary judgment can be determined as a matter of law if the material facts are not in dispute. *Antio, LLC v. Dep't of Revenue*, 26 Wn. App. 2d 129, 134, 527 P.3d 164 (2023).

We can affirm a trial court's grant of summary judgment on any ground supported by the record. *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 611, 486 P.3d 125 (2021).

### 2. Legal Principles

#### a. Contract Interpretation

We interpret leases in the same manner as other contracts. *See Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713-14, 334 P.3d 116 (2014) (applying general contract interpretation principles to commercial lease). The primary purpose of contract interpretation is to ascertain the intent of the parties at the time of contract formation. *Id*. at 712. We give words their ordinary meaning unless the entire agreement clearly demonstrates otherwise. *Id*. at 713. We interpret contracts as a whole and use the context of all the provisions of the contract to interpret particular language. *Id*.

In addition, we apply the context rule to discern the meaning of a contract's language. *Id*. Under the context rule, we can examine the context surrounding a contract's execution, including the consideration of extrinsic evidence to help understand the parties' intent. *Id*. Extrinsic evidence is to be used to determine what the language in the contract means, not to show an intent independent of the contract, or to modify the text. *Id*.

   b.   Agreement to Agree

We apply the objective manifestation test to determine whether an enforceable contract has been formed between parties. *P.E. Sys., LLC v. CPI Corp.*, 176 Wn.2d 198, 207, 289 P.3d 638 (2012). The parties must "objectively manifest their mutual assent to all material terms of the agreement." *Id.* at 209; *see also Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 48, 470 P.3d 486 (2020). And "the terms assented to must be sufficiently definite." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 178, 94 P.3d 945 (2004).

Agreements to agree are unenforceable. *P.E. Sys.*, 176 Wn.2d at 208. An agreement to agree is " 'an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete.' " *Keystone*, 152 Wn.2d at 175-76 (quoting *Sandeman v. Sayres*, 50 Wn.2d 539, 541-42, 314 P.2d 428 (1957)). Courts refuse to enforce agreements to agree to " 'avoid trapping parties in surprise contractual obligations.' " *Keystone*, 152 Wn.2d at 178 (quoting *Teachers Ins. & Annuity Ass'n v. Tribune Co.,* 670 F. Supp. 491, 497 (S.D.N.Y. 1987)).

However, agreements with open terms are enforceable. *P.E. Sys.*, 176 Wn.2d at 208. " 'Under an agreement with open terms, the parties intend to be bound by the key points agreed upon with the remaining terms supplied by a court or another authoritative source, such as the Uniform Commercial Code.' " *Id.* (quoting *Keystone*, 152 Wn.2d at 176).

10

In *P.E. Systems*, the Supreme Court considered whether a contract was an unenforceable agreement to agree. 176 Wn.2d at 207-10. In that case, the contract required the parties to calculate a client's historic cost by using a specific formula set out in the contract. *Id*. at 201-02. The contract also stated that the final number resulting from the formula would be "set forth and mutually agreed to by the parties" in an addendum. *Id*. at 202. The court concluded that this contract was not an agreement to agree because the formula for determining cost was nonnegotiable, and the addendum was an "open term that [could] easily be calculated." *Id*. at 209- 210.

In contrast, in *Sandeman*, the Supreme Court determined that a bonus provision within an employment contract was an agreement to agree. 50 Wn.2d at 540. The provision stated that a "suitable" bonus "will be decided upon," and paid to the employee after several months so that the employer could "properly evaluate the market and acceptability of our products." *Id.* at 540. The court found this provision to be an agreement to agree because it required "a further meeting of the minds of the parties before it would become a complete and enforceable agreement." *Id.* at 542.

### c. Condition Precedent

A condition precedent is an event that must occur before there is a right to performance of a contract. *U.S. Bank Nat'l Ass'n as Tr. for Truman 2016 SC6 Title Tr. v. Rooslid*, 17 Wn. App. 2d 589, 599, 487 P.3d 212 (2021). Nonoccurrence of a condition precedent excuses the parties from performance. *Id*. We can discern whether a contractual provision is a condition precedent based on the intent of the parties, as determined by the language of the contract and surrounding circumstances. *Id*. The following words suggest a conditional intent: while, when, so that, as soon as, provided that, on condition, and after. *Id.*; *see also Tacoma Northpark, LLC v. NW, LLC*,

123 Wn. App. 73, 80, 96 P.3d 454 (2004). Where liability under a contract depends on a condition precedent, one cannot avoid their liability by making the performance of the condition precedent impossible. *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 636, 700 P.2d 338 (1985).

"The general rule with respect to compliance with the terms of a bilateral contract is not strict compliance, but substantial compliance." *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wn. App. 205, 220, 317 P.3d 543 (2014). This rule applies to conditions precedent as well. *See U.S. Bank Nat'l Ass'n*, 17 Wn. App. 2d at 602-03. Therefore, nonmaterial breaches of a condition precedent will not void the contract. *See id.* at 602-05.

d.    Waiver

Waiver is the intentional and voluntary relinquishment of a known right. *Schroeder v. Excelsior Mgmt. Group, LLC*, 177 Wn.2d 94, 106, 297 P.3d 677 (2013). Parties to a contract are generally required to follow contract provisions unless they are waived. *See Mike M. Johnson, Inc. v. County of Spokane*, 150 Wn.2d 375, 386, 78 P.3d 161 (2003). A party may waive a contract provision that is meant for its benefit. *Id.* And contract provisions that are meant to benefit both parties to a contract still can be waived. *Salvo v. Thatcher*, 128 Wn. App. 579, 586-87, 116 P.3d 1019 (2005).

Waiver may be either express or implied through a party's conduct. *In re Est. of Petelle*, 195 Wn.2d 661, 665, 462 P.3d 848 (2020). Implied waiver occurs when a party's unequivocal acts or conduct demonstrate an intent to waive. *224 Westlake, LLC v. Engstrom Props., LLC*, 169 Wn. App. 700, 714, 281 P.3d 693 (2012). But waiver cannot be implied from a party's ambiguous conduct. *Id.* And the party's conduct must be inconsistent with any intention other than waiver. *Edmonson v. Popchoi*, 155 Wn. App. 376, 390, 228 P.3d 780 (2010).

12

The burden of proving intent to waive is on the party claiming waiver. *Saili v. Parkland Auto Ctr., Inc.*, 181 Wn. App. 221, 225, 329 P.3d 915 (2014).

3.    Analysis

The issue here is when the lease commenced. Fife Portal argues that the lease commenced in March 2017, when the lease was executed. Subway argues that the lease commencement date was in June 2018 based on the provisions of section R1 of the rider. We conclude that under section R1, the lease commenced in June 2018.

a.    Enforceability of Section R1

Initially, Fife Portal argues that the provision in section R1 describing the lease commencement date was an unenforceable agreement to agree. We disagree.

The relevant section, section R1 of the rider, states,

> This Lease and all of its corresponding rights and obligations other than the payment of Rent shall commence when all of the following requirements have been met ("Lease Commencement Date"): 1) Completion of Landlord's work and delivery of possession, 2) Receipt by Tenant of all necessary approvals and permits and 3) acceptance of the Premises by Tenant as evidenced by Tenant's written acknowledgement of receipt and acceptance of a letter of possession from Landlord (Exhibit B).

CP at 152. And Exhibit B states,

> In accordance with the Lease Agreement between the parties dated ____ 20 , Landlord warrants by signature below that all of it's construction obligations under the lease are complete and the premises is hereby delivered to Tenant on ____ 20 . Execution of this Letter of Possession by Tenant shall signify the delivery of possession and acceptance of same by Tenant and satisfy the obligations of section of the lease.

CP at 161.

Fife Portal argues that when read together, section R1 and exhibit B required the parties to agree on a post-ratification commencement date affirmatively. But nothing in the text of these subsections suggests that the date exhibit B was signed would constitute a negotiated

commencement date of the lease. In fact, under section R1, the lease could commence after exhibit B was signed even if the permitting process was completed at a later date.

Instead, section R1 describes three easily identifiable events that would trigger the commencement of the lease: (1) completion of Fife Portal's work and delivery of possession, (2) Subway's receipt of all necessary approvals and permits, and (3) Subway's acceptance of the premises. The lease identified what the landlord's duties were and whether they were complete was readily ascertainable by inspection of the premises. *See P.E. Sys.*, 176 Wn.2d at 210 (finding contract valid where it contains an easily calculated open term).

Nothing about section R1 threatened to trap the parties in " 'surprise contractual obligations' " like the agreements to agree contemplated in other cases. *Keystone*, 152 Wn.2d at 178 (quoting *Teachers Ins.*, 670 F. Supp. at 497). The terms of this contract are even more definite than the enforceable contract discussed in *P.E. Systems*, because in that case there was an explicit reference to a future mutual agreement. 176 Wn.2d at 201-02. And here, there were no open terms that required future resolution; the triggering events were definite and clear. *Id*. at 208-210 (discussing that contract contains open terms).

Fife Portal argues that exhibit B required future negotiations because it stated that the Fife Portal "warrants" that its construction obligations were complete and "hereby" delivered possession. But these terms do not suggest Subway and Fife Portal had to agree on anything. Therefore, we conclude that section R1 is not an unenforceable agreement to agree.

b.    Condition Precedent

Fife Portal argues that even if section R1 was enforceable, execution of exhibit B attached to section R1 was a condition precedent to the lease commencing that was never fulfilled. We disagree.

First, we conclude that the signing of exhibit B was not a condition precedent to commencement of the contract. The contract states that exhibit B is *evidence* that Subway accepted the premises, not a requirement for commencement of the lease. Subway's actual acceptance was the third condition for commencement of the lease. The term "as evidenced by" does not suggest the form was required as a condition of performance under the contract. CP at 152; *see U.S. Bank Nat'l Ass'n*, 17 Wn. App. 2d at 599 (listing operative language that suggests a condition precedent).

Second, the general rule is that only substantial compliance, not strict compliance, is required for contractual terms and conditions precedent. *DC Farms*, 179 Wn. App. at 220; *U.S. Bank*, 17 Wn. App. 2d at 602-05. Here, there is no dispute that Fife Portal completed its construction obligations, the permitting process was completed, and Subway accepted the premises. The parties agree that those conditions were met in June 2018. Therefore, even absent execution of exhibit B, the requirements of section R1 were met. And the duties and obligations in the lease commenced when the required conditions were actually met. Therefore, substantial compliance occurred even though exhibit B was not signed.

Third, where liability under a contract depends on a condition precedent, a party cannot avoid their liability by making the performance of the condition precedent impossible. *Barrett*, 40 Wn. App. at 636 ("failure or nonoccurrence of a condition will not excuse the promisor's performance if the condition's failure was the fault of the promisor."). Here, Fife Portal made performance impossible because it refused to sign exhibit B when Subway proffered it even though there was no question that Fife Portal had completed its construction obligations and delivered possession to Subway. Fife Portal may not now escape the terms of the deal it negotiated and entered in to because it refused to sign exhibit B.

Fourth, Subway – the party benefitted – waived exhibit B as a requirement of performance. "A party to a contract may waive a contract provision, which is meant for its benefit, and may imply waiver through its conduct." *Mike M. Johnson*, 150 Wn.2d. at 386. Fife Portal states that Exhibit B was added to benefit Subway. And the text clarifies that part three of the lease commencement date was intended to benefit Subway, because the provision gave *Subway* the right to reject the letter of possession from the Fife Portal or to avoid accepting the premises. Signing exhibit B was an additional obligation that Fife Portal had to perform to assist Subway in its recordkeeping needs. Provision 3 of section R1 and exhibit B were made to benefit Subway, and therefore Subway had the sole right to waive the letter of possession requirement. Subway waived this requirement when it stopped trying to get Fife Portal to sign exhibit B and continued performing.

c.  Summary

We conclude that there is no genuine dispute that section R1 was a valid and enforceable term in the lease. The parties do not dispute that the commencement conditions were met, at their earliest, in June 2018 when Subway received its permits from the City of Fife and Sua opened its restaurant. Therefore, we conclude that the lease commenced in June 2018. This means that Subway's September 2022 renewal notice occurred more than six months before expiration of the lease in June 2023 and was timely. We hold that as a matter of law, Subway is not guilty of unlawful detainer because its renewal notice was timely and it possessed the property pursuant to a valid lease.

Accordingly, we affirm the trial court's grant of summary judgment in favor of Subway.[2]

---

[2] Because of our holding, we need not address Subway's alternative arguments based on a commencement date of January 1, 2018.

C.     FIFE PORTAL'S SUMMARY JUDGMENT MOTION

Fife Portal argues in an assignment of error and in his brief that the trial court erred in denying its motion for summary judgment. But just as the trial court did not err in granting summary judgment in favor of Subway, the court did not err in denying Fife Portal's summary judgment motion.

CONCLUSION

We affirm the trial court's summary judgment order. This decision is binding on JAMAT.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____

MAXA, P.J.


We concur:

_____

GLASGOW, J.


_____

CRUSER, J.